[Cite as *In re A.G.M.C.*, 2010-Ohio-5188.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN THE MATTER OF:

    A.G.M.C.,                            CASE NO. 9-10-30
    DEPENDENT CHILD,

[TAMMY CRISP –                     O P I N I O N
    APPELLANT].

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2007 AB 0137

**Judgment Affirmed**

**Date of Decision:**    October 25, 2010

APPEARANCES:

    *Robert C. Nemo*  for Appellant

    *David Stamolis*  for Appellee

    *Douglas Diequez,* Guardian Ad Litem

Case No. 9-10-30

**ROGERS, J.**

{¶1} Mother-Appellant, Tammy Crisp, appeals from the judgment of the Marion County Court of Common Pleas, Family Division, granting permanent custody of her daughter, A.C., to Marion County Children's Services ("Children's Services"). On appeal, Crisp argues that the trial court abused its discretion in denying her motion for a continuance of the hearing for modification of temporary custody to permanent custody, and that the trial court erred in granting permanent custody to Children's Services where clear and convincing evidence was not presented that the child could not be placed with her and that it was in the best interest of the child to be placed in the permanent custody of Children's Services. Based on the following, we affirm the judgment of the trial court.

{¶2} In December 2007, Children's Services filed a motion for ex parte emergency orders, requesting that temporary custody of Crisp's daughter, A.C., be given to Flossie Nichols, A.C.'s grandmother, due to Crisp's history of drug and alcohol abuse, and the recent charges against Crisp for child endangerment and operating a motor vehicle while intoxicated[1]. Subsequently, the magistrate granted the motion and awarded temporary custody of A.C. to Nichols.

---

[1] We note that Children's Services and other witnesses referred to the offense of operating a motor vehicle while "intoxicated." Although there is no such offense under Ohio laws, we have assumed they meant operating a vehicle while "under the influence of alcohol (and/or drugs)" pursuant to R. C. 4511.19. For purposes of clarity, we have used Children's Services and the witnesses' terminology in this opinion.

{¶3} On January 4, 2008, Children's Services filed a complaint alleging A.C. to be a dependent child under R.C. 2151.04 due to Crisp's current incarceration on charges of operating a motor vehicle while intoxicated and child endangerment, and her history of unstable housing and drug and alcohol abuse. In the complaint, Children's Services requested protective supervision and that temporary custody of A.C. be granted to Nichols.

{¶4} Subsequently, on January 14, 2008, Children's Services filed an amended complaint, listing A.C.'s father as unknown, alleging her to be both a dependent and neglected child, and requesting the same disposition.

{¶5} On January 17, 2008, the trial court appointed Doug Diequez as Guardian Ad Litem ("GAL").

{¶6} On January 31, 2008, Children's Services filed another motion for ex parte temporary orders, requesting that A.C. be placed in its temporary custody due to Nichols allowing Crisp unsupervised visitation of A.C., where A.C. was with Crisp when she entered the emergency room in an incoherent state and appeared to be under the influence of drugs or alcohol. Subsequently, the trial court granted the motion and placed A.C. in the temporary custody of Children's Services.

{¶7} In February 2008, the trial court approved the case plan submitted by Children's Services which called for reunification between A.C. and Crisp, and

required Crisp to complete a drug and alcohol assessment, to submit to random drug testing, to abstain from all drug and alcohol use, to complete a parenting class by May 1, 2008, and to continue with mental health counseling and medication. Additionally, the case plan placed A.C. with a foster family and permitted Crisp visitation two days per week for two hours per day.

{¶8} In April 2008, Children's Services filed and the trial court granted a motion to dismiss its January 4, 2008 complaint and to continue with all previously imposed orders. Subsequently, Children's Services filed another complaint, alleging A.C. to be neglected and dependant based upon Crisp's drug and alcohol abuse, recent arrest for a probation violation for operating a motor vehicle while intoxicated, and positive test for marijuana use, and requesting that it be awarded temporary custody and protective supervision of A.C.

{¶9} On May 27, 2008, the trial court found A.C. to be dependent based upon a stipulation by the parties, ordered that A.C. remain in the temporary custody of Children's Services, and ordered Crisp to comply with the case plan and Children's Services to arrange visitation.

{¶10} On May 29, 2008, Children's Services filed a semi-annual administrative review with the trial court, stating that Crisp had failed to abstain from alcohol use, as she was forced to leave a homeless shelter because of her alcohol consumption; that Crisp had completed several drug screens with no

positive tests since February 2008; that Crisp falsely reported that she had been attending a drug and alcohol treatment program; that Crisp was arrested in April 2008 on charges of disorderly conduct while intoxicated; that Crisp reported that she had been attending weekly therapy sessions, but that her therapist indicated she had not attended a therapy session since March; that, since Crisp was forced to leave the homeless shelter in April 2008, she had failed to provide a current address; that, during visitation between Crisp and A.C., they exhibited a very close bond; and, that A.C.'s placement with the foster family should continue due to Crisp's drug and alcohol use, lack of stable housing, and income and mental health issues.

{¶11} In May 2008, the trial court adopted an amended case plan submitted by Children's Services, providing that Crisp follow all recommendations of the drug and alcohol assessment program; that she submit to random drug screenings within twenty-four hours of a caseworker's request; that she abstain from drug and alcohol use while providing care for A.C.; that she demonstrate appropriate parenting techniques during all visitation times; that she not participate in any activity that would result in a finding of child abuse or neglect; that she continue with mental health counseling and medication; that she obtain approved housing; that she maintain such housing for no less than three consecutive months; that she provide her caseworker with copies of the rental agreement and her pay stubs upon

request; that she report any changes in her residence to the caseworker within seventy-two hours; and, that she permit the caseworker, upon request, to inspect her home. Additionally, the case plan provided for a goal of reunifying A.C. and Crisp.

{¶12} In September 2008, Crisp filed a motion requesting reunification with A.C. and a temporary order of increased visitation time, arguing that she had substantially complied with the case plan and that reunification and increased visitation time was in A.C.'s best interest.

{¶13} In October 2008, Children's Services filed a motion for an annual review and an extension of the temporary commitment order for A.C., stating that A.C.'s foster family continues to provide for her basic needs; that Crisp had completed all case plan goals and objectives with the exception of being able to provide for A.C.'s basic needs; that Crisp needed to obtain a stable and legal source of income to provide for A.C.; and, that the previously approved case plan should remain in effect.

{¶14} Subsequently, the trial court issued a journal entry ordering that Children's Services continue to have temporary custody of the child; that Crisp comply with the case plan; and, that Crisp have additional times of unsupervised visitation.

{¶15} In November 2008, the trial court conducted a dispositional review, terminating the temporary custody of Children's Services and returning custody of A.C. to Crisp, requiring that Children's Services provide protective supervision, and requiring that Crisp continue compliance with the case plan.

{¶16} Subsequently, the trial court adopted another amended case plan on the basis of its award of custody of A.C. back to Crisp, stating that Crisp had complied with the requirements of completing a drug and alcohol assessment, parenting classes, and a psychological assessment, and terminating the visitation plan.

{¶17} Additionally, Children's Services filed its semi-annual review, finding that A.C. was returned to Crisp's custody; that Crisp took multiple random drug screenings and never tested positive; that no drugs or drug paraphernalia was observed in Crisp's home on multiple visits; that Crisp successfully completed drug and alcohol counseling; that Crisp moved out of a shelter and had been living in a home since July 2008; that Crisp's friend paid the rent for the home; that all utilities were functioning in the home and there were no household environmental hazards present; that Crisp's past substance abuse history, mental health instability, and limited financial resources continued to create the likelihood of maltreatment of A.C.; that Children's Services will continue to monitor Crisp's progress toward case plan goals and her ability to provide for A.C.; that, when

Crisp attended previous visitation times with A.C., there was a strong bond between her and A.C.; that continued drug screening was necessary to ensure that Crisp did not relapse with her substance abuse; and, that protective supervision remained necessary to ensure Crisp continued to attend mental health counseling.

{¶18} On February 9, 2009, Children's Services filed a motion for an ex parte/emergency order granting it custody of A.C. on the basis that Crisp was arrested for disorderly conduct, child endangerment, and obstruction of justice, and that there were no other appropriate adults to provide for A.C. Subsequently, the trial granted the motion and awarded Children's Services emergency temporary custody of A.C.

{¶19} On February 11, 2009, Children's Services filed a motion requesting a modification of the protective supervision order of A.C. to an order granting it temporary custody, and, in March 2009, the trial court granted the motion.

{¶20} In May 2009, Children's Services filed its semi-annual administrative review stating that A.C. was placed with her previous foster parents, George and Dorene Sturm; that Crisp tested positive for cocaine in April and May 2009, and was arrested in February 2009 as a result of being intoxicated; that Crisp did not have a legal form of income; that Crisp continued to live in a home in which the rent is paid by one of her friends; that Crisp continued to deny her drug use and had been consistently unable to maintain a sober lifestyle; that

Crisp was attending counseling sessions and an alcoholic's anonymous program, but refused a referral to an in-patient rehabilitation program; that the caseworker had not conducted a home inspection since March 2009, despite the fact that nine attempts were made in April and May 2009; that Crisp consistently canceled scheduled home visits with the caseworker and did not answer the door when the caseworker arrived unannounced; and, that Crisp had attended nine out of the scheduled eighteen visitation appointments with A.C.

{¶21} In July 2009, the trial court adopted an amended case plan which required Crisp to continue to submit to random drug screenings within twenty-four hours of a request, to abstain from drug and alcohol use, to continue with mental health counseling and medication, to maintain stable, approved housing that is clean and free from hazards, and to report any changes in her residence to the caseworker within seventy-two hours. Additionally, the case plan set forth a goal of reunification and permitted Crisp visitation with A.C. twice each week for two hours.

{¶22} In August 2009, Children's Services filed a motion requesting the modification of temporary custody to permanent custody on the basis of Crisp's failure to comply with the case plan, including her failure to refrain from drug and alcohol abuse, her arrest for disorderly conduct while intoxicated in June and

August 2009, and her failure to maintain adequate housing, evidenced by her eviction in July 2009 for failure to pay rent.

**{¶23}** In September 2009, Crisp filed a motion requesting that Flossie Nichols, A.C.'s maternal grandmother, be granted legal custody of A.C.

**{¶24}** On March 18, 2010, the case proceeded to a dispositional hearing, at which Crisp's attorney made an oral motion for a continuance due to Crisp's absence. Specifically, trial counsel informed the trial court that he had not had contact with Crisp for several months; that when he arrived in court, Crisp called him and inquired into the time of the hearing and informed him that she was on her way to the emergency room; and, that Crisp subsequently called his office and informed them that she would not be in court. The trial court then denied the motion, finding that Crisp was attempting to further delay the proceedings.

**{¶25}** Thereafter, Nancy Bernhard testified that she was a paralegal and court liaison for Children's Services; that a Putative Father Registry had been certified by the State that indicated no putative father was registered for A.C.; that B.C., one of Crisp's children, was in the custody of his father, David McGue; that the Hardin County Juvenile Court granted custody of another one of Crisp's children, W.C., to Shannon and William McKinley; and, that Crisp had convictions in April 2009 for endangering children, criminal damaging, and obstructing official business, a conviction in August 2009 for criminal trespassing,

a second conviction for criminal trespassing in October 2009, and convictions in December 2009 for disorderly conduct, intoxication, and assault.

{¶26} Kristin Warren testified that she was the quality improvement coordinator and mental health therapist for the Marion Area Counseling Center ("Counseling Center"); that Crisp attended mental health therapy sessions at the Counseling Center; that Crisp failed to attend numerous appointments; and, that Crisp was terminated from the care of the Counseling Center because she failed to return for treatment.

{¶27} Brad Gerfen testified that he was employed as an intake investigator for Children's Services; that he was previously a caseworker for Children's Services and was assigned to Crisp's case for a period of time; that Crisp met some of the goals and objectives for the case plan, but failed to meet others; that Crisp would "jump back and forth" between psychiatrists (dispositional hearing tr., p. 19); that Crisp was initially living in a shelter in Marion, but moved to a house where a friend paid rent on her behalf; that he conducted random drug screenings of Crisp, and she passed all of those screenings; that, however, it was later discovered those drug screenings were not producing accurate results, as they would only show a positive test if the individual was impaired or actively using drugs; that Crisp was arrested in December 2008 for disorderly conduct while intoxicated; that Crisp did not have a job and was not paying her own rent or

utilities; that, in order to assist Crisp in reuniting with A.C., Children's Services had her attend counseling sessions with Tim Brown at Community Counseling, parenting classes, and psychiatric counseling; that he attempted to establish the identity of A.C.'s father, but was unsuccessful; that, while presiding over supervised visits between A.C. and Crisp, he observed an appropriate relationship between the two; that, while he was the caseworker on Crisp's case, A.C. was returned to Crisp's custody; and, that, when custody of A.C. was returned to Crisp, she provided adequate food and an appropriate residence for the child.

{¶28} Matt Coldiron testified that he conducted case management at Children's Services, including case plans and case counseling with clients; that, on February 8, 2009, he was contacted to respond to Marion General Hospital, as A.C. was at the hospital after Crisp had been arrested; that he was not able to contact Crisp after arriving at the hospital because she was incarcerated; that he was ordered to request a removal of A.C. from Crisp's custody due to the incident; that A.C. was placed in foster care with the Sturm family; and, that he did not attempt to contact any of Crisp's relatives because he did not know the identity of any of her relatives.

{¶29} Tim Brown testified that he was employed as a mental health and addictions counselor at Community Counseling Services; that he counseled Crisp sporadically from 2007 until November 2009; that Crisp made some progress

during the time period, but was not making significant progress near the end; that Crisp made statements to him that she continued to use drugs and alcohol; that, in his opinion, Crisp needed to do a better job of establishing a stable home environment, including abstaining from alcohol and drugs; that he took steps to have Crisp admitted for inpatient treatment, but she did not want to participate; that Crisp would often make future appointments as she left the counseling sessions, but she missed many of those appointments; and, that Crisp was discharged from the agency because she did not follow through with treatment.

{¶30} Brandy Page testified that she was employed with Children's Services and was Crisp's caseworker since February 2009; that her case plan for Crisp included mental health and substance abuse treatment, and a requirement that Crisp maintain stable housing; that Crisp had seven children, all of whom were with their respective fathers, with the exception of one child who was with Crisp's sister; that Crisp had three different addresses since she had been handling her case; that she did visit the residence at which Crisp lived from February to July of 2009, and it was an appropriate place for a child; that a man by the name of Tim Roberts was paying Crisp's rent on her behalf while she lived at that residence; that Crisp had not held a job since she had been handling her case, and Crisp did not receive any public assistance other than Medicaid; that she had not visited any of Crisp's other residences despite her requests to Crisp to do so; that Crisp

reported on multiple occasions that she was residing in a shelter; that she administered seven drug screenings to Crisp, and she tested positive for cocaine and marijuana use on five occasions; that Crisp attended a detoxification program at St. Rita's hospital, but she tested positive for cocaine immediately after she completed the program; that she offered to place Crisp in an inpatient drug-addiction treatment center called Stepping Stones on multiple occasions, but Crisp always declined the offer; that Crisp reported to her that she had been arrested twenty-two times during the time period she served as Crisp's caseworker, but she was only able to verify eleven of those arrests; and, that Crisp informed her that she had used masking agents to attempt to pass the drug screenings.

{¶31} Page further testified that she supervised visitation between Crisp and A.C.; that Crisp attended most of the visitation appointments, and her interaction with A.C. was appropriate; that A.C. had been in foster care and was adjusting well, although she had experienced "some emotional issues related to * * * not understanding the situation due to her young age" (id. at p. 50); that A.C. and Crisp had a strong bond, and A.C. often threw temper tantrums when she was forced to separate from Crisp; that these temper tantrums were more severe following a visitation period where there had been an extended time between visitations; that, if Crisp did not have a drug and mental-health problem, she would have adequate parenting skills; that Crisp recently requested to be placed in

the Stepping Stones inpatient drug-addiction treatment center, but that, in order to refer her to the program, they must report that Crisp has been making progress in her struggle with drug addition; that she had concerns about Crisp's mental health, as Crisp had been unstable for an extended period of time; that, since she had served as Crisp's caseworker, there had only been brief times where Crisp had "done well" (id. at p. 56); that Crisp did not want assistance obtaining a job because Crisp reported she could not work due to mental health issues and was applying for social security; that, during the time she had acted as the caseworker, there had not been an opportunity to reunify Crisp and A.C.; and, that, based upon her experience and training, it was in A.C.'s best interest to be placed in the permanent custody of Children's Services.

{¶32} Page continued that A.C. and her foster parents had a very good relationship; that she often referred to her foster mother as "mom" and referred to their residence as her "home" (id. at p. 58); that, if A.C. was placed back with Crisp, there would be risks, as Crisp uses very poor judgment when she is under the influence of drugs or alcohol; that she investigated multiple family members and friends of Crisp for placement, but none were appropriate; that, on a previous occasion, A.C. was placed with Crisp's mother, but Children's Services requested and was granted an emergency removal after her mother permitted Crisp to drive A.C. to the emergency room while Crisp was under the influence of drugs or

alcohol; that she had been unable to investigate the last two residence addresses that Crisp gave to Children's Services because Crisp told her that the men who owned those homes did not want any involvement with Children's Services; and, that she did not know where Crisp presently resided.

{¶33} Doreen Sturm testified that she and her husband George Sturm had been the foster parents to A.C. for most of the past two years; that A.C. did very well in their home; that A.C. was integrated into the family and recognized herself as a member of the family; that there was also an eight-year-old boy in the residence; that he and A.C. had a brother/sister relationship, as they liked each other, but also argued; that she and her husband had been foster parents for approximately eight years; and, that, after A.C. had visitations with Crisp, she would observe negative behaviors from A.C. for one or two days, including aggressiveness.

{¶34} At the close of the presentation of evidence, Crisp's attorney made an oral motion for the trial court to order Crisp into an inpatient drug-addiction treatment center, as Crisp previously requested, and the trial court denied the motion. Additionally, at the close of the hearing, Children's Services notified the trial court that, according to its other staff members, Crisp never arrived at the hospital despite her request for a motion to continue the hearing on that basis.

{¶35} On March 26, 2010, the GAL filed his report stating that he visited A.C. while she was in her foster home, and she appeared to be happy, well cared for, and appropriately dressed; that, to the best of his knowledge, Crisp had not been employed in the last two years; that Crisp informed him that she was applying for social security benefits, but that she had not been awarded any benefits; that Crisp had moved several times and had either lived in other people's homes or had someone pay her rent and utilities; that he did not know where she presently resided; that Crisp had not attended any counseling sessions since November 2009; that Crisp had been arrested many times for disorderly conduct while intoxicated and for criminal trespassing; that most of the arrests were alcohol related; that Crisp had informed him that she had a problem with abusing alcohol and that she wanted to obtain help to overcome that problem; that, although Crisp had substance abuse problems, if she were to become "clean and sober and on her mental health medications, she [could] be a suitable parent to [A.C.]" (GAL report, p. 3); that, however, he had concerns about Crisp being able to keep A.C. safe until she was able to control her substance abuse problem and exhibit a significant period of sobriety; that, because she had not been able to control her alcohol and substance abuse problems in the past two years, he did not believe Crisp could presently care for A.C.; that Crisp is "an intelligent, capable woman * * * who has the requisite skills to care for a child. However, her

addictions prevent her from being a good mother to her daughter and exhibiting the decision making abilities that are necessary to be a parent." (Id.) Finally, the GAL report stated the following:

> **I hope that the court would consider a less restrictive alternative than permanent custody, so that Ms. Crisp would have the possibility of regaining custody of her daughter at some point in the future, or at the very least to maintain visitation with [A.C.]. I would not recommend she have unsupervised visits, and definitely not to have her daughter returned to her for a substantial period of time until she has exhibited a period of sobriety**.

(Id. at p. 4).

{¶36} On March 30, 2010, the GAL testified that, since he was appointed Crisp's GAL in January 2008, he had not known Crisp to be employed; that she had also had two or three different residences during this time, and that he often had difficulty contacting her; that, for the past eighteen months, Crisp had not been able to care for a child, and that it would not be in the child's best interest to be placed with Crisp; that Crisp's aunt came forward on March 15, 2010, and expressed her interest in obtaining custody of A.C., but she had never come forward before this time, and she had not filed a motion with the trial court; and, that reunification between Crisp and A.C. was not possible, and that permanent custody was the only option.

{¶37} The GAL continued that Crisp had a bond with A.C.; that A.C. loved Crisp; that, if Crisp were involved in the rehabilitation program at Stepping Stones

for a period of time, he would be willing to consider having A.C. returned to Crisp while she is in the program; that Crisp informed him that her mother was not interested in having custody of A.C.; that he would like to see Crisp reunited with A.C., but that he did not see how anything other than permanent custody could be granted to Children's Services because of Crisp's drug and alcohol problem and because the case had been ongoing for over two years; and, that he did not think A.C. would be harmed if Children's Services was granted permanent custody.

**{¶38}** In April 2010, the trial court granted Children's Services motion for permanent custody, stating the following in its judgment entry:

> **The Court, in making findings of fact, has considered all the evidence admitted.  \* \* \* The Court does not make findings of fact as to every piece of evidence.  The omission of the Court to make a specific finding does not suggest that the Court did not consider the fact in arriving at the ultimate decision.**
>
> **\* \* \***
>
> **Mother has failed to make significant progress under the Case Plan from February, 2009, to date.  Mother has changed residences three (3) times, and is currently homeless and her whereabouts are unknown.  Tammy Crisp is currently unemployed, and without any income. She admittedly continues abusing drugs and alcohol, and of the seven (7) drug screens administered, she tested positive five (5) times for cocaine and marijuana.  Mother was referred for mental health counseling and only sporadically attended and eventually was terminated from treatment due to failure to keep appointments.  \* \* \***
>
> **\* \* \***

**The Foster Mother indicated that [A.C.] has lived with her and her family a majority of the past three (3) years, with the exception of approximately three (3) months when she returned to Mother. She testified that A.C. has become integrated in their family, and she considers her eight year old son her brother, and refers to her as Mom. * * * She further stated she is a stay at home mom, and has observed some negative behaviors by [A.C.] following visits with her mother, such as temper tantrums. The negative behaviors also seem to be worse after extended absences of [A.C.] not seeing her mother. * * ***

**\* \* \***

**\* \* \* [A.C.] has been in the temporary custody of [Children's Services] from January, 2008 to November 2008, and from February, 2009, to the present, or approximately twenty-three (23) months of the last twenty-six (26) months, and she has continued to reside in her current foster home placement during that time. This continued placement is the direct result of Mother's inability and/or refusal to abstain from the abuse of alcohol and drugs. Due to Mother's continued substance abuse, she has failed to provide suitable support for her daughter. * * * Mother's current circumstances of addiction, lack of employment, homelessness and untreated mental illness do not present any opportunity for return of her daughter within a reasonable time or in the foreseeable future.**

**Tammy Crisp has seven (7) children, all of which have been removed from her care and custody. She continued to admit abuse of alcohol and drugs, and this is evidenced by her positive drugs screens and her most recent arrest for Disorderly Conduct on March 8, 2010. * * ***

**This Court finds by clear and convincing evidence, that it is in the best interest of [A.C.] to approve the Motion filed by [Children's Services] and grant permanent custody of [A.C] to Marion County Children's Services. In examining the factors contained in Ohio Revised Code Section 2141.414(D), including all other relevant factors presented, continuing her current placement with the foster care family is in her best interests.**

**[A.C.] has resided outside the care and custody of her mother for twenty-three (23) of the past twenty-six (26) months, is flourishing in her current placement, and is in need and deserving of a legally secure permanent placement. The current and continuing circumstances of Tammy Crisp prevent this from occurring without a grant of permanent custody to Marion County Children Services. Mother's substance abuse, failure to maintain treatment, continued unemployment and failure to maintain adequate housing indicates she has decided not to reunify with her daughter, but prefers her current life choices over the needs of her daughter.**

**The Court finds by clear and convincing evidence that [A.C.] cannot be placed with her mother within a reasonable period of time and further should not be placed with her due to her current circumstances, with no expectation for improvement in the foreseeable future. Pursuant to Ohio Revised Code Section 2151.414(E)(1), Tammy Crisp has failed to remedy the conditions which caused removal of her daughter for placement outside of her home. Mother has failed to comply with the Case Plan developed for this family * * *. Tammy Crisp has refused to enter treatment for her substance abuse and addiction, failed to obtain/maintain suitable housing and employment and refused mental health treatment required for her to provide for the needs of her daughter.**

**In addition, Tammy Crisp has demonstrated a lack of commitment toward her daughter by her failure to regularly support and visit her, and her inability to provide an adequate permanent home pursuant to Ohio Revised Code Section 2151.414(E)(4). Mother's failure to comply with the Case Plan, frequent incarceration and current lack of housing and employment, continued drug and alcohol abuse and refusal of treatment clearly demonstrates an unwillingness to provide for the basic needs of [A.C.] pursuant to Ohio Revised Code Section 2151.414(E)(14).**

**The Court having considered all relevant factors contained in Ohio Revised Code Sections 2151.414(E)(1) through (16) finds by clear and convincing evidence * * * that Mother, Tammy**

**Crisp, is unable to provide for the care of her daughter, [A.C.] and therefore, the Motion of the Marion County Children Services for Permanent Custody of [A.C.] is hereby granted.**

(Apr. 2010 Judgment Entry, pp. 1-8)

{¶39} It is from this judgment that Crisp appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR CONTINUANCE.**

*Assignment of Error No. II*

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WHEN THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE BEST INTEREST OF THE CHILD TO BE PLACED IN THE PERMANENT CUSTODY OF APPELLEE.**

*Assignment of Error No. I*

{¶40} In her first assignment of error, Crisp argues that the trial court abused its discretion in denying her motion for a continuance of the permanent custody hearing. Specifically, she contends that the legitimacy of her delay, caused by her need to go to the hospital, coupled with the importance of the proceedings and the insignificant inconvenience to the parties necessitated a continuance. We disagree.

{¶41} An appellate court reviews a trial court's ruling on a motion for a continuance for an abuse of discretion. *In re R.C.*, 3d Dist. No. 16-09-11, 16-09-12, 16-09-13, 2010-Ohio-3800, ¶20, citing *In re T.C.,* 140 Ohio App.3d 409, 2000-Ohio-1769. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. See *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶¶17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶42} "'The review of a decision on a motion for continuance requires the appellate court to apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *Gabel v. Gabel*, 3d Dist. No. 9-04-13, 2004-Ohio-4292, ¶12, quoting *Burton v. Burton* (1999), 132 Ohio App.3d 473, 476, 1999-Ohio-844. Furthermore, the factors a court must consider in deciding a motion for a continuance include the length of the delay requested, whether previous continuances have been granted, the inconvenience to the parties, witnesses, attorneys, and the court, whether the request is reasonable or purposeful and contrived to delay the proceedings, and whether the movant contributed to the circumstances giving rise to the request. *Hendricks v.*

*Hendricks*, 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶16, citing *Gabel*, 2004-Ohio-4292, at ¶12.

{¶43} In the case sub judice, Crisp's attorney made an oral motion for a continuance on the basis that Crisp called and informed him that she would not be able to attend the hearing because she needed to go to the hospital. While this may appear to be a valid reason for the trial court to grant the continuance, no evidence was ever submitted, either prior or subsequent to the hearing, that Crisp actually went to the hospital, and her attorney's statements were not evidence on the matter. See, generally, *Calex Corp v. United Steelworkers of Am.* (2000), 137 Ohio App.3d 74, 86. Additionally, a number of other continuances had been granted in this case, and the case had been pending in the trial court for over a year and a half. Although the other continuances were not on account of requests by Crisp, a continuance would have resulted in several more months of delays, and the trial court had a duty to resolve this case as quickly as possible for the best interest of the child. Moreover, while we recognize the importance of a parent's due process right to attend a permanent custody hearing, *In re J.W.*, 9th Dist. No. 24924, 2009-Ohio-6957, ¶20, such right is not absolute, see *In re P.J.*, 11th Dist. Nos. 2008-A-0047, 2008-A-0053, 2009-Ohio-182, ¶68, and we must also give deference to the trial court's finding that Crisp's motion to continue was for purposes of delaying the proceedings, which is further supported by the lack of

evidence demonstrating the legitimacy of her request. Finally, we note that Crisp had not been in communication with her attorney for several months prior to the hearing, and that she alleges no specific prejudice as a result of proceeding with the hearing in her absence.

{¶44} Consequently, we find that the trial court did not abuse its discretion in denying Crisp's motion for a continuance.

{¶45} Accordingly, we overrule Crisp's first assignment of error.

*Assignment of Error No. II*

{¶46} In her second assignment of error, Crisp argues that the trial court erred by granting permanent custody to Children's Services. Specifically, she contends that clear and convincing evidence was not presented that A.C. could not be placed with her, and that it was in A.C.'s best interest to be placed in the permanent custody of Children's Services. We disagree.

{¶47} In reviewing a grant of permanent custody, it is important to first note that "the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes* (1997), 79 Ohio St.3d 46, 48, citing *In re Murray* (1990), 52 Ohio St.3d 155, 157. Although parents have a fundamental liberty interest in the upbringing of their children, those rights are not absolute. *In re Thomas,* 3d Dist. No. 5-03-08, 2003-Ohio-5885, ¶7, citing *Murray,* 52 Ohio St.3d at 157. Parental rights "are always subject to the ultimate welfare of the child, which is the polestar or

controlling principle to be observed." *In re Cunningham* (1979), 59 Ohio St.2d 100, 106 (citation omitted).

**{¶48}** All permanent custody determinations made under R.C. 2151.414 must be supported by clear and convincing evidence. *In re Hiatt* (1993), 86 Ohio App.3d 716, 725. Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104. In determining whether the trial court's finding was supported by clear and convincing evidence, appellate courts "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, citing *Ford v. Osborne* (1887), 45 Ohio St. 1; *Cole v. McClure* (1913), 88 Ohio St. 1; *Frate v. Rimenik* (1926), 115 Ohio St. 11. As such, an appellate court must resolve whether the trial court's determination is supported by competent, credible evidence, *Jones v. Lucas Cty. Children Serv. Bd.* (1988), 46 Ohio App.3d 85, 86, and, absent a finding of abuse of discretion, as set forth in our disposition of Crisp's first assignment of error, the trial court's

determination will be upheld. *In re Robison,* 3d Dist. No. 5-07-41, 2008-Ohio-516, ¶8, citing *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 1994-Ohio-483.

{¶49} Once a child has been adjudicated dependent, neglected, or abused, a children's services agency may elect to seek permanent custody either at the initial disposition hearing pursuant to R.C. 2151.353 or at a post-dispositional hearing pursuant to R.C. 2151.414 by filing a motion under R.C. 2151.413. *In re Burton*, 3d Dist. No. 10-04-01, 2004-Ohio-4021, ¶9.

{¶50} Permanent custody determinations made via a post-dispositional hearing require a two-prong analysis. First, the trial court must determine whether any conditions set forth under R.C. 2151.414(B)(1) or (2) are present. If a condition is found, the trial court then determines whether permanent custody is in the best interest of the child. See *In re Scott,* 3d Dist. No. 13-07-18, 2007-Ohio-6426, ¶31.

{¶51} R.C. 2151.414(B)(2) provides as follows:

**With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.**

**(1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to**

**substantially remedy the conditions causing the child to be placed outside the child's home.**

**\* \* \***

**(4)   The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;**

**\* \* \***

**(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;**

**\* \* \***

**(16)  Any other factor the court considers relevant.**

R.C. 2151.414(E)(1), (4), (14), (16).

**{¶52}** If the trial court finds that the child cannot be placed with one of the child's parents within a reasonable time or that the child should not be placed with either parent based upon the factors set forth in R.C. 2151.414(E), the trial court then must move to the second prong of the analysis and determine whether a grant of permanent custody is in the best interest of the child.  R.C. 2151.414(D) sets forth a list of non-exclusive factors the court may use in making this determination.  These factors are, in pertinent part:

**(a)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of**

**home providers, and any other person who may significantly affect the child;**

**\* \* \***

**(c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period \* \* \*;**

**(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.**

R.C. 2151.414(D)(1)(a), (c), (d).

{¶53} In the case at bar, the trial court found several of the R.C. 2151.414(E) factors present to support a finding that A.C. could not be placed with Crisp within a reasonable time and should not be placed with Crisp, and these findings were supported by the testimony at the hearing.

{¶54} Crisp's initial caseworker, Gerfen, testified that Crisp was living in a shelter in Marion for some time, but then moved to a house where the rent was paid by one of her friends; that Crisp did not have a job to support herself; and, that, although Crisp passed multiple drug screenings, it was later discovered that those screenings were not producing accurate results.

{¶55} Crisp's second caseworker, Page, testified that Crisp was never employed while she was her caseworker; that Crisp tested positive for cocaine and marijuana on five occasions; that Crisp attended a detoxification program at St.

Rita's Hospital but failed a drug screening shortly after completing the program; that she offered to place Crisp in an inpatient drug-addiction treatment center called Stepping Stones on multiple occasions, but Crisp always declined the offer; that she verified Crisp was arrested eleven times during the period in which she served as Crisp's caseworker; that she had concerns about Crisp's mental health, as Crisp had been unstable for an extended period of time; that she had been unable to investigate the last two residency addresses that Crisp gave Children's Services because Crisp told her that the men who owned those homes did not want any involvement with Children's Services; and, that she did not know where Crisp presently resided.

{¶56} Crisp's counselor, Brown, testified that Crisp made some progress from 2007 until November 2009, but very little progress in the later half of that time period; that Crisp admitted to drug and alcohol use; that Crisp needed to establish a stable home environment; that he took steps to have Crisp admitted for inpatient treatment, but she did not want to participate; that Crisp would often make future appointments as she left the counseling sessions, but she missed many of those appointments; and, that Crisp was discharged from the agency because she did not follow through with treatment.

{¶57} Additionally, the GAL's report stated that Crisp had moved several times and had either lived in other people's homes or had someone pay her rent

and utilities; that he did not know where Crisp currently resided; that Crisp had not attended any counseling sessions since November 2009; that Crisp had been arrested many times for disorderly conduct while intoxicated and for criminal trespassing; that most of the arrests were alcohol related; that he had concerns about Crisp being able to keep A.C. safe until Crisp was able to control her substance abuse problem; and, that, because Crisp had not been able to control her alcohol and substance abuse problems in the past two years, he did not believe Crisp could presently care for A.C. Moreover, the GAL also testified that reunification between Crisp and A.C. was not possible, and that permanent custody was the only option.

{¶58} Based upon the evidence presented, we find that the trial court's findings that Crisp demonstrated a lack of commitment toward A.C. by failing to regularly support and visit her and provide an adequate permanent home; that Crisp's lack of housing and employment, continued drug and alcohol abuse, and refusal of treatment demonstrated an unwillingness to provide for A.C's basic needs; and, that Crisp failed to remedy the conditions which caused A.C.'s removal were supported by clear and convincing evidence.

{¶59} Moreover, we also find that the trial court considered the best interest factors under R.C. 2151.414(D) and that the trial court's finding that a

grant of permanent custody to Children's Services was in A.C.'s best interest was supported by clear and convincing evidence.

{¶60} The trial court specifically found that A.C. had been in the custody of Children's Services for twenty-three of the previous twenty-six months; that A.C. was flourishing in her current foster home placement; and, that A.C. was in need of a secure permanent placement, but Crisp's current and continuing circumstances prevented this from occurring without a grant of permanent custody to Children's Services.

{¶61} Additionally, A.C.'s foster parent, Sturm, testified that A.C. had adjusted very well in their home, and that A.C. was integrated into the family. Page testified that A.C. and her foster parents had a very good relationship; that she often referred to her foster mother as "mom" and referred to the their residence as her home; that, if A.C. was placed back with Crisp, there would be risks, as Crisp uses very poor judgment when she is under the influence of drugs or alcohol; that, during the time she had acted as the caseworker, there was not an opportunity to reunify Crisp and A.C.; and, that, based upon her experience and training, it was in A.C.'s best interest to be placed in the permanent custody of Children's Services. Finally, the GAL testified that it would not be in A.C's best interest to be placed back with Crisp.

**{¶62}** Consequently, because we conclude that the trial court found that the factors supporting a grant of permanent custody to Children's Services were present under R.C. 2151.414(E); that the trial court considered the best interest factors of R.C. 2151.414(D) when awarding permanent custody to Children's Services; and, that all of the trial court's findings were supported by clear and convincing evidence, we find there to be no abuse of discretion in the trial court's award of permanent custody to Children's Services.

**{¶63}** Accordingly, we overrule Crisp's second assignment of error.

**{¶64}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**