[Cite as *Bradshaw v. Bradshaw*, 2022-Ohio-2448.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

RICKI BRADSHAW,

    PLAINTIFF-APPELLEE,          CASE NO. 1-21-62

    v.

AMBER BRADSHAW,           O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR2021 0170**

**Judgment Affirmed**

**Date of Decision: July 18, 2022**

APPEARANCES:

    *Stephen J. Mansfield* for Appellant

    *Jeremy M. Tomb* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Amber Bradshaw, appeals the November 23, 2021 judgment of the Allen County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm.

*Background*

{¶2} Ricki and Amber Bradshaw were married on March 31, 2015. Two minor children were born of the marriage, T.B. (YOB: 2016) and F.B. (YOB: 2020). On May 28, 2021, Ricki filed a complaint for divorce in the Allen County Court of Common Pleas, Domestic Relations Division. On July 14, 2021, Amber filed a pro se answer to the complaint. Soon thereafter, Amber retained counsel who filed an answer on her behalf.

{¶3} The trial court held the final divorce hearing on October 26, 2021. Ricki, Ricki's trial counsel, and Amber's trial counsel appeared at the final hearing; however, Amber was not present. At the onset of the hearing, Amber's trial counsel requested a continuance to allow Amber, who was residing in Texas, the opportunity to travel to Ohio to attend the final hearing. The trial court denied the motion for a continuance and the final divorce hearing proceeded without Amber present.

{¶4} On November 5, 2021, the trial court filed its decision granting the parties a divorce on the grounds of incompatibility. Relevant to this appeal, the trial court determined it was in the best interest of the minor children for Ricki to be

designated the residential parent and legal custodian. The trial court granted Amber parenting time with the children commencing one week after the end of educational classes until July 31 of each year as well as parenting time from December 26 to December 30 annually. The trial court ordered the children, who were living in Texas with Amber at the time of the final hearing, to be exchanged within seven days of the filing of the decree of divorce.

{¶5} The trial court filed the decree of divorce on November 23, 2021. The following day, Amber filed a motion for a new trial pursuant to Civ.R. 59. Specifically, she argued that the trial court's refusal to grant her a continuance prevented her from presenting evidence and denied the trial court the opportunity to hear evidence necessary to make a knowing decision on the matter. That same day, Amber also filed a motion to stay the execution of the judgment entry pending the trial court's decision on her request for a new trial. On December 7, 2021, Ricki filed a memorandum in opposition to Amber's motion for a new trial and a memorandum in opposition to Amber's motion for stay of execution of judgment entry. On December 20, 2021, the trial court denied Amber's pending motions.

{¶6} On December 22, 2021, Amber filed her notice of appeal. She raises two assignments of error for our review.

**Assignment of Error No. I**

**The [trial] court's denial of the appellant's request for a continuance was improper.**

{¶7} In her first assignment of error, Amber argues that the trial court abused its discretion by not continuing the final divorce hearing to a later date so that she could attend. We disagree.

*Standard of Review*

{¶8} "'Continuances shall be granted only when imperative to secure fair treatment for the parties.'" *In re Distafano*, 3d Dist. Seneca No. 13-06-14, 2006-Ohio-4430, ¶ 11, quoting Juv.R. 23. "'A decision by the trial court to deny a motion for a continuance is within the sound discretion of the trial court and should not be reversed absent a showing of abuse of that discretion.'" *Id.*, quoting *In re Miller*, 3d Dist. Auglaize No. 2-04-02, 2004-Ohio-3023, ¶ 7. The term "abuse of discretion" refers to a decision that is "arbitrary, unreasonable, or unconscionable." *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275 (1984).

*Relevant Law*

{¶9} "''The review of a decision on a motion for continuance requires the appellate court to apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.''" *In re A.G.M.C.*, 3d Dist. Marion No. 9-10-30, 2010-Ohio-5188, ¶ 42, quoting *Gabel v. Gabel*, 3d Dist. Marion No. 9-04-13, 2004-Ohio-4292, ¶ 12, quoting *Burton v. Burton*, 132 Ohio App.3d 473, 476 (3d Dist.1999). In considering a motion for a continuance, a court

should consider (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) any inconvenience to parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for a legitimate purpose or is instead dilatory, purposeful, or contrived; (5) whether the defendant contributed to the situation that gives rise to the motion for a continuance; and (6) other relevant factors, depending on the unique facts of a case. *In re V.G.*, 3d Dist. Logan No. 8-20-57, 2021-Ohio-3554, ¶ 75, citing *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). A court is not required to give particular weight to any one of these factors. *See Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, ¶ 23. Furthermore, "a trial court is not even explicitly required to outline the *Unger* factors when denying a continuance." *State v. Shurelds*, 3d Dist. Allen No. 1-20-35, 2021-Ohio-1560, ¶ 56.

*Analysis*

**{¶10}** The continuance that is at issue on appeal appears, from the record, to have been the only continuance Amber formally requested. Moreover, in the oral motion for a continuance, Amber's trial counsel was unable to specify the timeframe of the continuance requested. (Oct. 26, 2021 Tr. at 1). However, when discussing the motion, the trial court referenced a length of continuance of approximately two and one-half to three months, an estimate that Amber's trial counsel did not rebuff. (*Id.* at 1-2).

**{¶11}** Ricki speculates in his appellee's brief that Amber's request for a continuance was made for the purpose of being dilatory, purposeful or contrived. In support of this allegation, Ricki argues that because the parties' minor children were residing with Amber in Texas, by intentionally dragging out the time before the final hearing she received the benefit of maintaining the status quo for as long as possible. However, the record is devoid of support for this assertion. Rather, the record indicates that Amber requested a continuance in order to obtain funds to travel from Texas to Ohio for the final hearing. However, the fact that Amber does not appear to have had an illegitimate reason to request a continuance does not mean that she had a compelling reason to do so. *State v. Kleman*, 3d Dist. Hardin No. 6-19-01, 2019-Ohio-4404, ¶ 9.

**{¶12}** Here, the record indicates that Amber was living in Ohio when Ricki filed for divorce. Further, Amber was served with the divorce complaint in Ohio. However, the record indicates that shortly thereafter, Amber chose to move to Austin, Texas with the parties' minor children despite her pending divorce proceedings in Ohio.[1] Accordingly, Amber contributed to the situation that gave rise to her motion for a continuance.

---

[1] The record contains conflicting information regarding the date of Amber's relocation to Texas. Ricki testified at the final hearing that he assisted Amber and the children during their move to Texas in March or April 2021. (Oct. 26, 2021 Tr. at 27). However, the complaint for divorce filed on May 28, 2021 indicates that the parties were living together in Delphos, Ohio at that time. (Doc. No. 1). Additionally, the record indicates that Amber was in Ohio when she was served with the complaint for divorce. However, Amber was living in Texas on July 14, 2021 when she filed her pro se answer to the divorce complaint. (Doc. No. 12).

**{¶13}** Further, the pretrial minutes indicate that the date for the October 26, 2021 final hearing was set at the pretrial held on August 4, 2021. Accordingly, Amber was aware of the final hearing date for more than two months. However, Amber did not arrange to attend the hearing or make a motion for a continuance until after the final hearing commenced. Additionally, the record indicates that the trial court informed Amber that if the parties came to an agreement on all issues, she could appear electronically to ratify the agreement on the record. However, it is also clear from the record that Amber had notice that, in the event that the parties did not reach an agreement, she could not appear remotely to testify. Additionally, Amber's witness list, which was filed by her trial counsel on October 22, 2021 names Amber as a witness. Thus, Amber had sufficient notice that she was expected to appear in-person at the final divorce hearing. Therefore, the trial court's denial of Amber's eleventh-hour motion for a continuance would have been foreseeable to Amber.

**{¶14}** Amber argues that because Ricki and his mother were the only witnesses who testified at the final hearing, Amber's request for a continuance did not inconvenience the parties, witnesses, opposing counsel, or the court. However, Ricki and his mother, who were present and prepared to testify at the final hearing would, nonetheless, have been inconvenienced by a continuance. Moreover, the

court and opposing counsel, who were likewise present and prepared for the scheduled final hearing would also have been inconvenienced by its continuance.

{¶15} Finally, Amber argues that the trial court should have granted her a continuance or allowed her to testify remotely due to ongoing concerns regarding the COVID-19 public-health crisis. However, the record is devoid of any support for this assertion. Amber's trial counsel made his oral motion for a continuance solely to allow Amber the opportunity to acquire the funds to travel to Ohio for the final hearing and made no mention of concerns regarding the COVID-19 health crisis.

{¶16} Accordingly, after reviewing the record and balancing the relevant factors, we do not conclude that the trial court abused its discretion in denying Amber's motion for a continuance.

{¶17} Amber's first assignment of error is overruled.

### Assignment of Error No. II

**The judgement of the trial court naming the Appellee the residential parent was against the manifest weight of the evidence.**

{¶18} In her second assignment of error, Amber argues that the trial court erred by naming Ricki the residential parent of the parties' minor children. We disagree.

*Standard of Review*

**{¶19}** "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Relevant Law*

**{¶20}** "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * *, the

court shall take into account that which would be in the best interest of the children."

R.C. 3109.04(B)(1). "'[T]he best interest standard must be applied in initial actions

to allocate parental rights in cases involving children of unmarried parents as well

as in the context of divorce, dissolution, or annulment.'" *Loewen v. Newsome*, 9th

Dist. Summit No. 28107, 2018-Ohio-73, ¶ 16, quoting *Anthony v. Wolfram*, 9th Dist.

Lorain No. 98CA007129, 1999 WL 771601, *2 (Sept. 29, 1999). R.C.

3109.04(F)(1) provides:

> In determining the best interest of a child pursuant to this section, * * * the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).

{¶21} "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill* at ¶ 29,

quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Id.*, citing *Meachem* at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22.

*Analysis*

{¶22} In its November 5, 2021 judgment entry, the trial court stated as follows:

> Evidence was also placed on record regarding the allocation of parental rights and responsibilities of the two minor children of the parties. Based upon the evidence the Court makes the following finding pursuant to Ohio Revised Code 3109.04:
>
> A. Ricki Bradshaw desires to be designated as the residential parent and legal custodian of the two minor children. He further indicated if he would not be, he would want at least seven (7) weeks in the summer for extended time of companionship, however desired the children to remain here with him, in spite of the fact that he had initially assisted Amber setting up with the children in Texas. Ricki also indicated he really didn't believe he had much choice, rather than to try to help Amber in that move at that particular time.
>
> B. There was no in camera interview of the children.
>
> C. The children have interacted with both of the parties and Ricki acknowledged Amber was also a good mother.

Testimony indicated that Ricki was a very good father and paid a great deal of attention to the children. As a result of his service related disability, Ricki is currently not employed in any capacity and is receiving disability benefits. He therefore has time available to spend with the children, as he is not otherwise employed outside of the home. The relatives of Ricki live in Delphos and in fact he resides in the home with his mother and many of his siblings at this point and there was sufficient physical room for the children to also be living there, which would facilitate support and relationships between the children and Ricki's immediate family as well.

D. The children had been living first of all in the State of Washington and then moved to Ohio until March of 2021 when Amber removed them to the State of Texas.

E. There was no indication of any issues of mental health of any of the children or the parties. There was indication that Ricki has had numerous physical issues resulting in his disability, however it was an accumulation of many smaller issues that caused him to reach the 100% level of VA disability. He has the ability to walk, manipulate, and otherwise physically assist the children in any necessary regard, and in fact, indicates that after his most recent neck surgery, he believes he may have a capacity to be employed in some respect depending upon the job.

F. The Court has no reason to believe that either party would not honor and facilitate Court approved parenting time rights, or visitation and companionship rights as set forth by the Court.

G. There was no evidence of either party failing to make proper child support payments, and in fact there was no temporary order in place in this case.

H. There was no indication of either parent, or any member of the household of either parent having been previously convicted of plead guilty to an offense where the minor child has been found to be an abused or neglected child.

There was also no evidence indicating that either party had committed any set of acts that would constitute that of domestic violence.

I.   There was no indication of any party continuously and willfully denying the other parties [sic] right to parenting time in accordance with the previously established order of the Court.  Ricki had indicated he had not been able to go out to see the [children] in Texas, but did not have the funds available to him to do so.

J.   Amber has indeed established a residence in the State of Texas.

In addition to all of the factors set forth previously, the Court also takes into consideration that Amber has now moved the [children] away from any family network of any extent and relocated in the State of Texas where only her mother lives as being family members on her behalf.

Testimony indicated the other members of her family live down in Florida.

This appears to be, at least on its face, another one of those situations where parties have taken steps to terminate their marriage and one of the parties believes that their life will be better if they get some distance away from the other party and the other party's family. Without children involved that would not really influence any decisions the Court would make.  However, when children are involved this is a major change in the life of the children and one that could detrimentally affect them for years and years to come.

The Court finds from the totality of the evidence presented that it is in the best interest of the two minor children for Ricki Bradshaw to be designated as the residential parent and legal custodian of the two minor children being [T.B.] (YOB 2016) and [F.B] (YOB 2020).

(Doc. No. 25).

{¶23} Thus, the record indicates that the trial court thoroughly considered the R.C. 3109.04(F)(1) statutory factors when determining that naming Ricki as the residential parent of T.B. and F.B. was in the children's best interest.  Moreover, a

review of the record indicates that competent, credible evidence supported the trial court's findings.

**{¶24}** At the final hearing, Ricki stated that he last saw the minor children, T.B. and F.B., when he helped Amber relocate to Austin, Texas. (Oct. 26, 2021 Tr. at 6). Although Ricki initially consented to the children moving to Texas with Amber, he stated that he is now requesting custody of the children and believes that to be in their best interest. (*Id.* at 6-7). Specifically, Ricki cited Amber's apparent "financial distress" as a cause of concern for her ability to maintain custody of the children. (*Id.* at 6).

**{¶25}** Ricki stated that he is not currently employed, but receives disability from the Department of Veterans Affairs. (*Id.* at 8). Ricki stated that because he does not work during the day, he is available to watch the children. (*Id.* at 41, 49, 52). Ricki clarified that despite receiving disability, he has the physical ability to care for the children. (*Id.* at 11-12).

**{¶26}** According to Ricki, Amber has the physical capability to work full-time and did so during the marriage. (*Id.* at 11, 41). Before Amber moved to Texas with the children, she was working as a delivery driver for Pizza Hut. (*Id.* at 11). However, she voluntarily quit her employment when she relocated to Texas. (*Id.*). When she moved to Texas, Amber planned to procure employment so she could assist in financially supporting the children. (*Id.* at 51). However, at the time of the

hearing, Amber had not obtained employment. (*Id.* at 51-52). According to Ricki, when Amber does gain employment, she will need to find childcare for the children and will incur those expenses. (*Id.* at 52).

{¶27} Ricki lives in his mother's home in Delphos, Ohio. (Oct. 26, 2021 Tr. at 45-46). Also residing in the home are Ricki's mother, his mother's husband, and four of Ricki's younger siblings ranging in age from 9 to 18. (*Id.* at 47, 56). Immediately prior to their separation, Amber, Ricki, and their children lived in Ricki's mother's home for approximately one year. (*Id.* at 46-47). Ricki described the home as having five bedrooms and being "[p]retty big" with appropriate rooms, beds, and space for the children. (*Id.* at 7, 46-47). According to Ricki, Amber did not express any concerns regarding the environment of his mother's home while she lived there. (*Id.* at 52). Further, none of the individuals residing in Ricki's residence have ever been convicted of an offense of domestic violence nor of an offense where a child was an abused, dependent, or neglected victim. (*Id.* at 56-57). Ricki stated that in addition to his mother and siblings, he has two aunts that live in Ohio. (*Id.* at 56). Ricki does not have any plans to relocate from the state of Ohio. (*Id.* at 57).

{¶28} Ricki stated that Amber is originally from Florida and has a lot of family there. (*Id.* at 56). However, she chose relocate to Texas because her mother lives there. (*Id.*). Ricki stated that in March or April of 2021, he assisted Amber

and the children move from his mother's home in Delphos, Ohio into an apartment with Amber's mother in Austin, Texas. (*Id.* at 27).

**{¶29}** According to Ricki, Amber is a good mother and cares well for the children. (*Id.* at 28). Further, when Ricki was serving in the military, he was away from home at times and Amber was the primary caregiver of the children. (*Id.* at 45). Ricki admitted that he has not seen the children since they moved with Amber to Texas. (*Id.* at 27-28). However, Ricki explained he does not currently have the financial ability to travel to Texas because he is paying all of the bills for both parties. (*Id.* at 29, 31, 50). He stated that he left the children with Amber in Austin, Texas because he believed that he had "no other option." (*Id.* at 28). Ricki stated that he does not believe that his children are better off living with Amber than they would be living with him. (*Id.* at 29).

**{¶30}** Marie Buffin, Ricki's mother, testified on Ricki's behalf. (Oct. 26, 2021 Tr. at 59). Buffin stated that she would "absolutely" characterize Ricki as a good father and that he "absolutely" loves his children. (*Id.* at 61). When asked if Amber is a good mother, Buffin stated that she "definitely loves her children." (*Id.* at 60). Marie also confirmed that her home has ample space for T.B. and F.B. (*Id.* at 61-62).

**{¶31}** Amber was not present at the final hearing and her trial counsel did not call any witnesses on her behalf.

{¶32} After a review of the record, we cannot say that the trial court's balancing of the relevant-statutory factors was arbitrary, unreasonable, or unconscionable. Accordingly, we find there is competent, credible evidence to support the trial court's findings. Therefore, the trial court did not abuse its discretion in determining that Ricki should be named as the residential parent and legal custodian of T.B. and F.B.

{¶33} For these reasons, Amber's second assignment of error is overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas, Domestic Relations Division.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**