[Cite as *Dinh v. Goble*, 2025-Ohio-5375.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

LINH T. DINH,

    PLAINTIFF-APPELLEE,

      CASE NO. 14-25-19

v.

ISSAC GOBLE,

    OPINION AND
    JUDGMENT ENTRY

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 23 DR 0279

Judgment Affirmed

Date of Decision: December 1, 2025

APPEARANCES:

    *Christopher L. Trolinger* for Appellant

    *Linh T. Dinh*, Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Issac Goble ("Goble"), brings this appeal from the April 18, 2025, judgment of the Union County Common Pleas Court. On appeal, Goble argues that the trial court erred by designating plaintiff-appellee, Linh Dinh ("Dinh"), as residential parent and legal custodian of the parties' child. In addition, Goble argues that the trial court erred by awarding Dinh spousal support, and that the trial court erred in its property distribution. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Goble went to Vietnam, *inter alia*, to seek cheaper medical treatment for back issues. While he was in Vietnam, Goble became involved in a romantic relationship with Dinh. Goble also secured employment in Vietnam working as a teacher.

{¶3} Goble and Dinh were married in Vietnam on December 10, 2019. They had one child together, a boy, born in May of 2020. When the pandemic impacted Goble's employment in Vietnam, he returned to the United States to seek employment. Goble returned to the United States in October of 2021, leaving Dinh and the parties' child in Vietnam.

{¶4} In November of 2022, Dinh and the child came to the United States to live with Goble on a "ten-year permanent resident Green Card." As part of Dinh's

immigration, Goble had to sign an affidavit attesting that he would be responsible for keeping Dinh at 125% above the poverty level.

{¶5} Once settled in Ohio, issues that began in Vietnam escalated between the parties. Goble claimed that Dinh was physically violent at times and threatened suicide. Dinh claimed that Goble consumed too much alcohol, causing problems that included Goble urinating in various places throughout the house while he was asleep/sleepwalking. Dinh also claimed that Goble was violent while drinking.

{¶6} An incident occurred on May 10, 2023, wherein Dinh called 911. Dinh claimed that after she took Goble's glass or his bottle of alcohol, Goble was angry and grabbed her wrist so hard that it hurt. Dinh bit Goble so that he would release her and she called the police. Upon arrival, law enforcement officers noted that Goble had some injury marks on his body but Dinh did not have any. Dinh was ultimately arrested and later convicted of persistent disorderly conduct as a result of the incident. The parties' relationship devolved from there, leading to Dinh filing for divorce and Goble filing a counterclaim also seeking a divorce. A GAL was appointed for the parties' child during the pendency of the divorce.

{¶7} The case proceeded to a final hearing before a magistrate spread across three dates: September 16, 2024, November 25, 2024, and November 26, 2024. A Vietnamese interpreter was utilized to help Dinh understand the proceedings.

{¶8} On January 29, 2025, the magistrate filed a decision and recommendations. As relevant to this appeal, the magistrate recommended—

consistent with the GAL's recommendation—that Dinh be designated residential parent and legal custodian of the parties' child. In addition, the magistrate recommended that Goble pay $500 per month in spousal support for five years.

{¶9} Goble filed objections to the magistrate's decision arguing that the recommendation of spousal support was not supported by the evidence, that the magistrate erred by not accepting Goble's shared parenting plan, and that there were errors related to the child support calculation.

{¶10} On April 18, 2025, the trial court filed a final judgment entry, largely overruling Goble's objections. The trial court noted that Goble had offered to pay $400 per month in spousal support for four years. Dinh was seeking $600 per month for five years. The trial court agreed with the magistrate that $500 per month for five years was appropriate in this instance, particularly given that Goble had sponsored Dinh for purposes of immigration.

{¶11} The trial court also agreed with the magistrate regarding parental rights and responsibilities; however, the trial court did make one alteration— permitting Goble to claim the child for tax purposes each year provided he was current with his spousal support and child support. Goble now brings the instant appeal from the trial court's judgment, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court's allocation of parental rights and responsibilities is not supported by the manifest weight of the evidence and constituted an abuse of discretion.**

**Second Assignment of Error**

**The trial court erred and abused its discretion in its award of spousal support both as to amount and duration and its decision is against the manifest weight of the evidence.**

**Third Assignment of Error**

**The trial court committed plain error in awarding appellant's separate property to appellee as a distributive award and in failing to tax effect the 401(K) which in combination result in a division of assets and liabilities which is inequitable and grossly disproportionate.**

*First Assignment of Error*

{¶12} In his first assignment of error, Goble argues that the trial court abused its discretion by determining that Dinh should be residential parent and legal custodian of the parties' child. Goble contends that the trial court's decision was against the manifest weight of the evidence.

*Standard of Review*

{¶13} Decisions concerning child custody matters rest within the sound discretion of the trial court. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

> The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.

*Id.*

{¶14} Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of custody. *Bradshaw v. Bradshaw*, 2022-Ohio-2448, ¶ 19 (3d Dist.). An abuse of discretion is present when a trial court's judgment is arbitrary, unreasonable, or unconscionable. *Id.* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Relevant Authority*

{¶15} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding . . ., the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). In determining the best interest of a child pursuant to R.C. 3109.04, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns

-6-

as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . .whether either parent . . . previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the

other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F).

**{¶16}** We emphasize that the trial court has discretion in determining which factors are relevant, and in determining the amount of weight to allocate to any given factor. *Bradshaw v. Bradshaw*, 2022-Ohio-2448, ¶ 21 (3d Dist.). However, although the trial court must consider all relevant factors, there is no requirement that the trial court explicitly analyze each factor in its entry, so long as the trial court's judgment is supported by credible evidence in the record. *See id.*

Analysis

**{¶17}** Testimony at the final hearing indicated that from October of 2021 to November of 2022, the parties' child was exclusively in Dinh's care in Vietnam while Goble re-established himself in Ohio. Once Dinh and the parties' child came to the United States, the family unit resided together.

**{¶18}** Dinh was employed as a nail technician and Goble worked at Honda. After the parties separated, issues arose regarding the child's bedtime. Goble wanted an earlier bedtime because while the child was with him, the child had to be awakened around 5 a.m. to go to a babysitter so Goble could get to work on time.

Dinh wanted a later bedtime for the child because she worked later in the evenings and she wanted to spend time with the child.

{¶19} The GAL indicated that she did not understand why Father would take the child to a babysitter so early in the morning when Dinh was available to care for him. The GAL spoke with the child's babysitter and the child's babysitter had the same concern. The child's babysitter indicated she was worried that Goble was sending the child to her instead of Dinh in the mornings because Goble was concerned with having to potentially pay Dinh more in child support.

{¶20} By all indications in the record, on the days that the child was awakened and taken to the babysitter at 5 a.m., he was more tired and acted-out in school. Recognizing that it was becoming an issue, Goble switched to working second shift at his job. However, at the final hearing he indicated he may be taking a new position with unknown hours.

{¶21} The evidence established that both parents loved their child and that both parties had reservations due to prior issues between the parties. Dinh accused Goble of having an issue with alcohol in the past that led to angry or violent behavior alongside urinating throughout the house while he was intoxicated. Goble accused Dinh of being unstable. Goble indicated that Dinh had always been aggressive with a violent temper. He testified that she threw things at him and on one occasion threatened suicide.

{¶22} Goble filed a proposed shared parenting plan, while Dinh sought to be residential parent and legal custodian. The GAL recommended that Dinh be residential parent and legal custodian of the child, with Goble getting alternating weekends and midweek visitation.

{¶23} In the magistrate's decision, the magistrate summarized the testimony provided by the parties and summarized the GAL's report and recommendation. In addition, the magistrate attached an exhibit to the decision addressing each of the factors in R.C. 3109.04(F)(1) and the factors related to shared parenting in R.C. 3109.04(F)(2).

{¶24} After stating that it had considered the requisite factors under R.C. 3109.04(F), the magistrate determined that a shared parenting plan was not in the best interests of the child. Ultimately the magistrate recommended that Dinh be named residential parent.

{¶25} Goble objected to the magistrate's decision on this issue and the trial court conducted an independent review and evaluation of the magistrate's analysis. Similar to the magistrate, the trial court determined that the shared parenting plan was not in the best interest of the child because "[t]he parents appear to be unable to reasonably communicate with each other, making shared parenting not feasible herein." (Doc. No. 95). In addition, the trial court agreed with the factual findings made by the magistrate related to R.C. 3109.04(F).

{¶26} Goble now argues that the trial court did not make sufficient findings of fact and conclusions of law to permit appellate review. However, as stated previously, there is no requirement that the trial court explicitly analyze each individual factor in its judgment entry. *Bradshaw v. Bradshaw*, 2022-Ohio-2448, ¶ 21 (3d Dist.). Rather it is imperative that the trial court consider the appropriate statutory factors. Here, the trial court explicitly evaluated R.C. 3109.04(F) and referenced it in its review of the magistrate's decision. Thus this argument is not well-taken.

{¶27} Goble next argues that the factors in R.C. 3109.04(F) should have been weighed differently and the outcome should have been more favorable to him. Although there was undoubtedly testimony that Goble cared for his child, the same was true of Dinh. Both parents are flawed, but the trial court was in a far better position to judge credibility of the witnesses and their ability to communicate.

{¶28} Given that the trial court conducted an independent review and agreed with the magistrate, and given that the trial court's finding was also consistent with the GAL's recommendation, we do not find that the trial court's determination was unreasonable, arbitrary, or unconscionable. While Goble would prefer this Court to weigh some factors more heavily in his favor, the trial court is given broad discretion in applying the weight of the factors in R.C. 3109.04(F). Based on the record before us, we find no abuse of discretion with the trial court's decision. Therefore, Goble's first assignment of error is overruled.

*Second Assignment of Error*

{¶29} In his second assignment of error, Goble argues that the trial court abused its discretion by awarding spousal support to Dinh in the amount of $500 per month for a period of sixty months.

Standard of Review

{¶30} Trial courts have broad discretion concerning an award of spousal support. *Schwieterman v. Schwieterman*, 2020-Ohio-4881, ¶ 69. Therefore, a trial court's decision related to spousal support will not be reversed absent an abuse of discretion. *Id*.

Relevant Authority

{¶31} Revised Code 3105.18 governs the award of spousal support in divorce cases. " '[S]pousal' support means any payment or payments to be made to a spouse or former spouse . . . that is both for sustenance and for support of the spouse[.]" In a divorce proceeding, the common pleas court may award spousal support to either party. R.C. 3105.18(B). In order to determine whether spousal support is appropriate and reasonable, R.C. 3105.18(C)(1) provides a list of factors that a trial court must consider. These factors read as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶32} Notably, an award of spousal support is not based solely on the need of a party; rather, the award must also be balanced against the obligor's ability to pay. *Schwieterman* at ¶ 69.

Analysis

{¶33} At the outset, we note that a critical factor in this spousal support decision that distinguishes it from many other cases is that Goble "sponsored" Dinh to come to the United States. He signed an "Affidavit of Support" indicating that he accepted the legal responsibility for financially supporting Dinh until she became a U.S. citizen or she was credited with 40 quarters of work.

{¶34} At the final hearing, the parties stipulated that Goble's income was $70,000 per year, and Dinh's income was $30,000 per year. In his closing trial brief, Goble actually recommended that he pay Dinh $400 per month for a period of four years. Dinh sought $600 per month for a period of five years.

{¶35} When the magistrate rendered its decision, the magistrate addressed each factor of R.C. 3105.18(C)(1). The magistrate noted that the parties' incomes were stipulated; that Goble had higher earning potential, particularly given Dinh was still struggling with the English language; that each party claimed the other was

abusive, that Goble had retirement benefits while Dinh had none; and that the marriage was five years. Given its analysis of the factors, and Goble sponsoring Dinh, the magistrate recommended $500 per month in spousal support for a period of five years.

{¶36} Goble objected to the magistrate's decision and the trial court conducted an independent review. As part of the review, the trial court agreed with the magistrate's findings under R.C. 3105.18(C)(1). The trial court then analyzed the incomes of the parties and determined that after child support and spousal support, Dinh's income would be $43,414.44 for two people in the household, while Goble's income minus child support and spousal support totaled $56,582.56 for one person in the household.

{¶37} Ultimately the trial court found the magistrate's recommendation both appropriate and reasonable for sustenance and support of Dinh. However, the trial court did alter the magistrate's recommendation and provide Goble the ability to claim the parties' child for tax purposes to ease his tax burden.

{¶38} Goble now argues on appeal that, again, the trial court failed to present an analysis that was sufficient for appellate review. We disagree. The trial court discussed the evidence and Goble's objection to the magistrate's decision for nearly two single-spaced pages, providing independent reasoning and support for its determination. Although there is no requisite quantity of analysis required by the trial court so long as the appropriate factors are considered, the record before us

shows that the trial court adequately analyzed the issue. Thus Goble's argument is not well taken.

**{¶39}** Goble also argues that given the relatively short duration of the marriage, a five-year order of spousal support was excessive. However, the duration of the marriage is only one factor to be considered when determining spousal support. Moreover, as we have stated previously, Goble specifically sponsored Dinh to come to the United States. In addition, the trial court analyzed the parties' incomes after applying child support and spousal support, and found them to be appropriate, if not equal.

**{¶40}** After reviewing the record, we do not find that the trial court abused its discretion by awarding spousal support to Dinh in this matter. Therefore, Goble's second assignment of error is overruled.

*Third Assignment of Error*

**{¶41}** In Goble's third assignment of error, he argues that the trial court committed plain error by awarding his "separate property" to Dinh and in failing to "tax effect" the 401(K) distributed to Goble.

Standard of Review

**{¶42}** Pursuant to Civ.R. 53(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the party has objected to that finding or conclusion as

required by Civ.R. 53(D)(3)(b).” Civ.R. 53(D) imposes an affirmative duty on the parties to timely object to a magistrate's order, identifying any error of fact or law. *Buford v. Singleton*, 2005-Ohio-753, ¶ 5 (10th Dist.). Failure to object to a magistrate's decision waives the right to appellate review of all but plain error. *Id.* at ¶ 6. The Supreme Court of Ohio has stated that in applying the doctrine of plain error in civil cases,

> reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 24.

Analysis

**{¶43}** Goble acknowledges that he failed to object to the magistrate's decision on these issues. Thus we review the matters for plain error only.

**{¶44}** Goble first argues that the trial court committed plain error by awarding a Nissan vehicle to Dinh, a separate asset of Goble's, without properly offsetting the division of property. Despite being a "separate"/premarital asset of Goble, the "Nissan Frontier" was provided to Dinh for use while the divorce was pending. At the final hearing, Goble's attorney indicated that Goble had already "gave" the Nissan Frontier to Dinh. The property had not been distributed at the time, and Dinh's attorney specifically stated that Dinh did not want the Nissan

Frontier. Dinh wanted the Honda Pilot. However, there was an issue with the Pilot, which carried a negative equity and was titled in Goble's name. Ultimately, consistent with Goble's desire and against Dinh's wishes, Dinh was given the Nissan. Given the state of the record, and the fact that Goble specifically offered the Nissan Frontier to Dinh, we find no plain error here.

{¶45} Next, Goble argues that the trial court erred by failing to consider the potential tax consequences related to the amount in his 401(K). However, as Dinh argues in her brief, Goble's 401(K) was not split and any tax consequences would be uncertain. *See generally*, *Nieman v. Nieman*, 2015-Ohio-5186 (3d Dist.). Therefore we can find no plain error in this instance.

{¶46} Finally, Goble argues that the overall distribution of assets and liabilities was unequal. However, the distribution of assets is not required to be precisely equal. Rather the distribution is intended to be "equitable." *Worden v. Worden*, 2017-Ohio-8019, ¶ 25 (3d Dist.). Moreover, during the final hearing, the parties agreed that Goble would keep the vast majority of the parties' personal property. Goble was able to keep the vehicles he specifically wanted and his retirement account in its entirety. Goble has shown us no compelling evidence that the distribution of assets in this case was anything other than equitable.[1] Therefore

---

[1] This is particularly true given that the trial court altered the magistrate's decision to provide Goble with the benefit of claiming the parties' child for tax purposes.

we do not find plain error in this matter, and Goble's third assignment of error is overruled.

*Conclusion*

{¶47} Having found no error prejudicial to Goble in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Union County Common Pleas Court is affirmed.

**Judgment Affirmed**

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 14-25-19

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm